**No. 19-1802**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

CITY OF PROVIDENCE and CITY OF CENTRAL FALLS,

Plaintiffs-Appellees,

v.

WILLIAM P. BARR, in his official capacity as United States Attorney General, and the UNITED STATES DEPARTMENT OF JUSTICE,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Rhode Island

**REPLY BRIEF FOR APPELLANTS**

JOSEPH H. HUNT
  *Assistant Attorney General*

AARON L. WEISMAN
  *United States Attorney*

BRIAN H. PANDYA
  *Deputy Associate Attorney General*

DANIEL TENNY
BRAD HINSHELWOOD

  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ..............................................................................1

ARGUMENT ....................................................................................................................2

I.   The Challenged Conditions Are Authorized By Statute .........................................2

      A.   34 U.S.C. § 10102(a)(6) Grants the Assistant Attorney General the
           Authority to Place "Special Conditions on All Grants" ............................2

      B.   The Challenged Conditions Are Authorized by 34 U.S.C. § 10153.........11

II.  The Byrne JAG Statute Requires Grantees to Comply With "Applicable
     Federal Laws," Including 8 U.S.C. § 1373 ........................................................... 12

III. Plaintiffs' Alternative Bases for Affirmance Should Be Rejected ...................... 16

CONCLUSION ............................................................................................................ 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*American Sur. Co. of N.Y. v. Marotta*,
  287 U.S. 513 (1933) .........................................................................................4

*Bennett v. Kentucky Dep't of Educ.*,
  470 U.S. 656 (1985) .......................................................................................22

*City of Chicago v. Sessions*,
  264 F. Supp. 3d 933 (N.D. Ill. 2017) ...........................................................12

*City of Los Angeles v. Barr*:
  929 F.3d 1136 (9th Cir. 2019).......................................................................23
  941 F.3d 931 (9th Cir. 2019) .....................................................................3, 5

*City of Philadelphia v. Attorney General*,
  916 F.3d 276 (3d Cir. 2019) ...............................................................3, 8, 13

*Ely v. Velde*,
  451 F.2d 1130 (4th Cir. 1971).......................................................................15

*Herrera-Inirio v. INS*,
  208 F.3d 299 (1st Cir. 2000)....................................................................18, 20

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
  452 U.S. 264 (1981) ................................................................................19, 20

*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) .......................................................................................11

*Kansas v. United States*,
  214 F.3d 1196 (10th Cir. 2000)......................................................................22

*Koslow v. Pennsylvania*,
  302 F.3d 161 (3d Cir. 2002) ..........................................................................22

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ..................................................................22

*McCulloch v. Maryland*,
  17 U.S. (4 Wheat.) 316 (1819) .................................................................19

*Murphy v. National Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018) .......................................................................17-18

*New York v. United States*,
  505 U.S. 144 (1992) ........................................................................22, 24

*Pension Benefit Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990) ...............................................................................10

*Perez v. Campbell*,
  402 U.S. 637 (1971) ...............................................................................19

*Printz v. United States*,
  521 U.S. 898 (1997) ........................................................................20, 21

*South Dakota v. Dole*,
  483 U.S. 203 (1987) ...............................................................16, 17, 22

*Stone v. INS*,
  514 U.S. 386 (1995) .................................................................................3

**Statutes:**

Coastal Zone Management Act of 1972,
  Pub. L. No. 92-583, 86 Stat. 1280 ...........................................................14

Dictionary Act,
  1 U.S.C. § 1 ..............................................................................................4

Historical and Archeological Preservation Act,
Pub. L. No. 93-291, 88 Stat. 174 (1974)................................................................14

Violence Against Women and Department of Justice Reauthorization Act of 2005,
Pub. L. No. 109-162, § 1152(b), 119 Stat. 2960, 3113 (2006)........................................3

Water Resources Reform and Development Act of 2014,
Pub. L. No. 113-121, § 1043(a)(3)(C)(ii)(II), 128 Stat. 1193, 1246 ...........................13

8 U.S.C. § 1373................................................................................. 2, 12

8 U.S.C. § 1373(c).................................................................................18

26 U.S.C. § 5812.................................................................................15

26 U.S.C. § 5841.................................................................................15

28 U.S.C. § 509....................................................................................8

34 U.S.C. § 10102(a)(2)............................................................................8

34 U.S.C. § 10102(a)(6)......................................................................... 2, 4

34 U.S.C. § 10109(a)(2)............................................................................6

34 U.S.C. § 10141(b)..............................................................................7

34 U.S.C. §§ 10151-10158..........................................................................7

34 U.S.C. § 10152(a)(1)...........................................................................11

34 U.S.C. § 10152(d)..............................................................................7

34 U.S.C. § 10153................................................................................22

34 U.S.C. § 10153(A)(4)...........................................................................11

34 U.S.C. § 10153(A)(5) .................................................................................25

34 U.S.C. § 10153(A)(5)(C) ........................................................................ 11, 12

34 U.S.C. § 10153(A)(5)(D) .....................................................................2, 12, 14

34 U.S.C. § 10156 ........................................................................................9

34 U.S.C. §§ 10171-10191 ..............................................................................7

34 U.S.C. § 10202(c)(1)(B) .............................................................................7

34 U.S.C. § 10202(c)(1)(C) .............................................................................7

34 U.S.C. § 10228(a) ...................................................................................15

34 U.S.C. § 10442(b) ...................................................................................10

34 U.S.C. § 10446(e)(3) .................................................................................10

34 U.S.C. § 20927(a) .....................................................................................9

34 U.S.C. § 30307(e)(2)(A) ..............................................................................9

34 U.S.C. § 40914(b)(1)(B) ..............................................................................8

34 U.S.C. § 60105(c) .....................................................................................9

42 U.S.C. § 16154(g)(1) .................................................................................13

**Regulations:**

2 C.F.R. § 200.207(a) .....................................................................................6

28 C.F.R. § 66.12(a) ................................................................................... 5, 6

**Legislative Materials:**

H.R. 3009, 114 Cong. § 3(b) (2015) ......................................................11

H.R. 5654, 114th Cong. § 4 (2016) ......................................................10

H.R. Rep . No. 109-233 (2005) ..............................................................4

S. 3100, 114th Cong. § 4 (2016) ..........................................................11

**Other Authority:**

Law Enf't Assistance Admin., U.S. Dep't of Justice, *Guidline Manual:
     Guide for Discretionary Grant Programs* (Sept. 30, 1978) ....................................................14

## INTRODUCTION AND SUMMARY

As the Ninth Circuit recently recognized, the Department of Justice has authority to place special conditions on all Byrne JAG grants.  The district court's contrary conclusion renders Congress's 2006 amendment to the relevant statute a nullity.

There is no basis for concluding that DOJ's authority to impose special conditions does not encompass the conditions at issue here.  The special conditions at issue are part of a laundry list of never-challenged special conditions ranging from information technology and "Buy American" requirements to bias-in-policing to body-armor requirements. A63-82.  All Byrne JAG grantees who wish to receive federal funds are expected to comply with those conditions irrespective of their "experiences" or whether they believed those conditions were "tailored to their local needs."  Pl. Br. 9.

Except for disagreeing with the policy underlying these special conditions, plaintiffs cannot answer why the federal government cannot condition law-enforcement grants on requiring basic levels of communication and information sharing.  The federal government has deemed that to be necessary to avoid undermining federal law enforcement in an area where Congress has contemplated that states and the federal government would work collaboratively, as each is regulating the same individuals.  Indeed, DOJ's Office of Justice Programs (OJP), which oversees Byrne JAG grants, was specifically created to enhance cooperation and promote liaisons between state and federal law enforcement.  *See* Gov't Br. 4.

There is likewise no basis for plaintiffs' assertion that a requirement to comply with "applicable Federal laws," 34 U.S.C. § 10153(A)(5)(D), provides free rein for plaintiffs to demand federal funds for their law-enforcement programs while flouting federal laws related to cooperation in law enforcement if those laws are not specific to federal grants. And plaintiffs' constitutional and administrative challenges—which the district court declined to reach—fare no better. Plaintiffs challenge a grant condition, which is plainly consistent with the Tenth Amendment under the permissive standards established under the Spending Clause, and plaintiffs' argument that 8 U.S.C. § 1373 might constitute commandeering outside the grant context is beside the point. In any event, § 1373 does not commandeer states and localities to regulate or enforce a federal regulatory scheme, but rather preempts state and local information-sharing restrictions that obstruct the federal government's enforcement of the immigration laws against individual aliens. Finally, plaintiffs' suggestion that the conditions are arbitrary and capricious adds nothing to their mistaken statutory arguments.

## ARGUMENT

## I. The Challenged Conditions Are Authorized By Statute

### A. 34 U.S.C. § 10102(a)(6) Grants the Assistant Attorney General the Authority to Place "Special Conditions on All Grants"

1. 34 U.S.C. § 10102(a)(6) vests the Assistant Attorney General with the authority to "exercise such other powers and functions as may be vested" in her "pursuant to this chapter or by delegation of the Attorney General, including placing

special conditions on all grants, and determining priority purposes for formula grants."

As our opening brief explained, Gov't Br. 19-20, Congress added the clause authorizing

the Assistant Attorney General to "plac[e] special conditions on all grants" to the statute

in 2006 when it created the Byrne JAG program.  *See* Violence Against Women and

Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 1152(b),

119 Stat. 2960, 3113 (2006).  The district court's essential error was in treating this

provision as applying "only to the extent such power has been vested in [the Assistant

Attorney General] pursuant to this chapter or by delegation of the Attorney General."

Add. 5.  As the Ninth Circuit recently recognized, because no amendment to the statute

would have been necessary to permit the Assistant Attorney General to exercise

authority she already possesses (or has been delegated to her), this reading "deprives

the 2006 amendment to § 10102(a)(6) of any meaning."  *City of Los Angeles v. Barr*, 941

F.3d 931, 939 (9th Cir. 2019).  The district court's decision thus ignores the cardinal

principle that "[w]hen Congress acts to amend a statute, [courts] presume it intends its

amendment to have real and substantial effect."  *Stone v. INS*, 514 U.S. 386, 397 (1995).

Plaintiffs do not grapple with this point.  Instead, they embrace the proposition

that the amendment was meaningless, contending that "the power DOJ attempts to

exercise here 'has *not* been vested in the Attorney General or the AAG in the Byrne

JAG statute or anywhere else in the United States Code.'"  Pl. Br. 41 (quoting *City of

Philadelphia v. Attorney General*, 916 F.3d 276, 287-88 (3d Cir. 2019)).  But this reading

3

renders the amendment completely meaningless because neither plaintiffs nor the district court has ever identified any power vested in the Assistant Attorney General elsewhere or delegated by the Attorney General to which this language could plausibly apply. Congress did not amend the statute to permit the Assistant Attorney General to wield authority that does not exist. Nor do plaintiffs reconcile their reading with the legislative history of the amendment, which confirms that the amendment "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005).

The statute's use of the term "including" does not alter this result. *See* Pl. Br. 41. Giving effect to Congress's amendment merely requires giving that term a commonplace meaning as "a word of extension or enlargement." *See, e.g.*, *American Sur. Co. of N.Y. v. Marotta*, 287 U.S. 513, 517 (1933). For example, the Dictionary Act uses the term in precisely this fashion, repeatedly using the word "include" to expand the meaning of the preceding language. *See* 1 U.S.C. § 1 (explaining, for example, that "words importing the masculine gender include the feminine as well"). Whatever the limits of DOJ's previous authority, the 2006 amendment undoubtedly established that the Assistant Attorney General has the general power to impose "special conditions on all grants" and determine "priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). That power was properly exercised here.

4

For the same reasons, plaintiffs are wrong to the extent they argue that Congress intended "the term 'special conditions' [to be] a regulatory term of art—'understood to be individualized requirements'" applied only to individual grantees. Pl. Br. 44 n.29 (*quoting Los Angeles*, 941 F.3d at 941)). The Ninth Circuit concluded "special conditions" was a term of art by noting that it had been used in a since-superseded regulation targeted at "high risk" grantees. *Los Angeles*, 941 F.3d at 940-42. But the regulation cited as support for this supposed term of art, 28 C.F.R. § 66.12(a), had been in place since 1988. Plaintiffs have no explanation for why, 16 years later, Congress would need to provide additional statutory authority for conditions like the ones imposed under a regulation that existed, apparently unchallenged, under the authority that predated the 2006 enactment.

The better reading of the 2006 amendment is that Congress intended to grant the Assistant Attorney General the authority to impose grant-wide special conditions if she thought the circumstances of a particular grant program warranted special conditions. That understanding of the amendment is consistent with OJP's practice of referring to its laundry list of conditions applicable to all grantees as special conditions, while conditions directed to individual grantees, such as those deemed high risk, are called "additional requirements." A66, ¶ 15 ("The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency . . . if the recipient is designated as 'high risk' for purposes of the DOJ high-risk grantee list.").

5

And the current regulation governing the administration of federal grants, 2 C.F.R. § 200.207(a), which superseded 28 C.F.R. § 66.12(a) in 2014, refers to individualized grant conditions as "specific award conditions," not special conditions. *See* 2 C.F.R. § 200.207(a) (providing that federal awarding agencies "may impose additional specific award conditions as needed" with certain categories of high risk grantees or those with "a history of fail[ing] to comply with the general or specific terms and conditions of a Federal award").[1]

OJP's long history of placing special conditions on Byrne JAG funds confirms that § 10102(a)(6) is a source of authority. Plaintiffs are wrong to suggest that all of the other special conditions applied to Byrne JAG grants are more modest or limited by other statutes. Pl. Br. 45 n. 30. Other special conditions are varied and sweeping, covering matters such as information technology requirements, A71 (¶¶ 28-29); protections for human research subjects, *id.* ¶ 31; restrictions on the purchase of certain military-style equipment, A75-76 (¶¶ 45-50); requirements regarding body armor purchases, A74 (¶¶ 40-41); and training requirements, A72 (¶¶ 34-35). These special conditions often require more than what is required by statute. For example, the special conditions restricting the purchase of certain military-style equipment, A75-76 (¶¶ 45-

---

[1]  Additionally, 34 U.S.C. § 10109(a)(2) provides that when auditing grant programs, OJP's audit office "shall take special conditions of the grant into account," further confirming that special conditions apply to the grant program as a whole rather than only to individual grantees.

50), go beyond the restrictions on "vehicles" and "luxury items" contained in 34 U.S.C. § 10152(d). Similarly, the codification of certain conditions relating to body armor in 2016, *see* 34 U.S.C. § 10202(c)(1)(B)-(C), occurred *only after* DOJ imposed them as special conditions in 2012. And DOJ imposes an "American-made" requirement for body-armor purchases, which Congress has not chosen to codify. A74 (¶ 41). Plaintiffs cannot explain how, if the present conditions are unlawful exercises of that authority, many other special conditions, which touch other important and sensitive subjects, are also not unlawful.

2. Plaintiffs' various other arguments fare no better. Plaintiffs first suggest that the conditions cannot be authorized because § 10102 is "a sub-provision outside of the Byrne JAG statute." Pl. Br. 40. But § 10102 plainly applies to the Byrne JAG program. Section 10102 is found in Chapter 101, entitled "Justice System Improvement," of Title 34 of the United States Code. Subchapter I of Chapter 101, which contains § 10102, describes the Office of Justice Programs and the role of the Senate-confirmed Assistant Attorney General. Subchapter IV establishes the Bureau of Justice Assistance, which is "headed by a Director" who "shall report to the Attorney General through the Assistant Attorney General." 34 U.S.C. § 10141(b). Subchapter V then establishes the Byrne JAG grant program, 34 U.S.C. §§ 10151-10158, and various other grant programs, *id.* §§ 10171-10191. Thus, the power to "plac[e] special conditions on all grants" necessarily includes Byrne JAG grants.

Plaintiffs likewise err in suggesting that the "structure of Section 10102" is inconsistent with the plain text of Congress's amendment. Pl. Br. 42 (quoting *City of Philadelphia*, 916 F.3d at 288). Plaintiffs' description of the powers conferred on the Assistant Attorney General as merely "ministerial," Pl. Br. 42, is belied by the other substantive powers in that provision, including "maintain[ing] liaison with . . . Federal and State governments in matters relating to criminal justice." 34 U.S.C. § 10102(a)(2). Nor is it in any respect "odd," Pl. Br. 42, to address the Assistant Attorney General's power to "plac[e] special conditions on all grants" in a provision that discusses her authority over all the programs she oversees. And plaintiffs are simply wrong to suggest that the plain statutory text "result[s] in the AAG possessing broader authority than the Attorney General," Pl. Br. 42, because any authority conferred on the Assistant Attorney General is likewise possessed by the Attorney General. *See* 28 U.S.C. § 509 (with exceptions not relevant here, "[a]ll functions of other officers of the Department of Justice . . . are vested in the Attorney General").

Plaintiffs also erroneously contend that the Department's interpretation of § 10102(a)(6) would render meaningless statutory provisions in which Congress set out limited penalties of specific percentages of Byrne JAG funds that may be withheld for non-compliance with certain other requirements. Pl. Br. 25-26. These provisions speak to penalties for certain conduct, not to special conditions related to funded programs and activities. *See, e.g.*, 34 U.S.C. § 40914(b)(1)(B) ("Attorney General may withhold not

8

more than 4 percent" of Byrne JAG funds for failure to provide information relevant to National Instant Criminal Background Check System); *id.* § 60105(c) ("not more than a 10-percent reduction" for failure to provide information regarding deaths of persons in state custody); *id.* § 20927(a) (ten percent of Byrne JAG funds for jurisdictions that do not implement the Sex Offender Registration and Notification Act requirements); *id.* § 30307(e)(2)(A) (five percent of funds received for prison purposes for States that have not adopted and complied with national standards regarding prison rape). It is neither superfluous nor inconsistent for Congress to set particular penalties that the Attorney General may impose for non-compliance with specific provisions, particularly after funds have been awarded, and at the same time authorize the Assistant Attorney General to impose special conditions that States and localities must agree to when accepting and using federal funds.

For similar reasons, plaintiffs fundamentally misunderstand the statutory scheme by focusing on the formula for the Byrne JAG grant. Pl. Br. 24-25, 42-43. DOJ has never claimed authority to deviate from the statutory formula established by Congress for determining the size of a particular jurisdiction's award, *see* 34 U.S.C. § 10156, and thus would not, absent specific statutory authorization, have authority to partially reduce grant awards except in the manner prescribed by the statutes discussed above. That a grantee's allocation is determined by the statutory formula does not excuse a grantee from the requirements of the grant, nor does it permit a grantee to demand its

share free from special conditions Congress authorized DOJ to impose on "all grants" in the statute that created the Byrne JAG program. Any state or locality that satisfactorily completes the Byrne JAG application is eligible to receive an award. That a jurisdiction chooses not to accept an award because it does not wish to comply with conditions imposed on the grant does not alter the jurisdiction's eligibility for the funds.

Nor do plaintiffs advance their argument by noting that Congress authorized the Attorney General to impose "reasonable conditions" when administering a different grant program designed to combat violence against women. Pl. Br. 43-44 (citing 34 U.S.C. § 10446(e)(3)). That program is not administered by the Assistant Attorney General for OJP but is instead administered by the Violence Against Women Office, which is a "separate and distinct office" within DOJ that is headed by a Director "who shall report to the Attorney General." 34 U.S.C. § 10442(b). The authority in that context is thus similar to the authority that Section 10102(a)(6) confers on the Assistant Attorney General to "plac[e] special conditions on all grants" administered by OJP.

Finally, plaintiffs mistakenly attempt to rely on various failed legislative proposals as evidence that the conditions are improper. Pl. Br. 7 n.1, 28-29. Failed legislative history is not a reliable tool of statutory interpretation. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990). And the failed legislative proposals plaintiffs trumpet are inapposite on their own terms. Some did not propose to amend the Byrne JAG program at all, *see, e.g.*, H.R. 5654, 114th Cong. § 4 (2016) (addressing funds from

Economic Development Administration Grants and Community Development Block Grants under Title 42); S. 3100, 114th Cong. § 4 (2016) (same), and the remainder would have required DOJ to withhold Byrne JAG funds from jurisdictions that did not provide specified forms of immigration cooperation, *see, e.g.*, H.R. 3009, 114th Cong., § 3(b) (2015). Here, DOJ is not purporting to withhold plaintiffs' funds. Rather, plaintiffs are challenging the special conditions included in the document awarding the funds. This is not a circumstance where Congress "discarded" language "in favor of other language" eventually enacted, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 443 (1987) (quotation marks omitted), but is instead and at most sheer inaction from which multiple inferences could be drawn.

### B. The Challenged Conditions Are Authorized by 34 U.S.C. § 10153

Plaintiffs misunderstand the purpose of other requirements of the Byrne JAG program which permit the Attorney General to "reasonably require" "programmatic" information about the funded program, 34 U.S.C. § 10153(A)(4), and to ensure that "there has been appropriate coordination with affected agencies," *id.* § 10153(A)(5)(C). Nothing in the text of those provisions limits the "programmatic" information that may be required, particularly through a special condition. The better reading is that "programmatic" information references those programs listed in 34 U.S.C. § 10152(a)(1), including "[l]aw enforcement programs" and "corrections . . . programs" funded by the grant. In that regard, the challenged conditions, which are on

their face limited to a funded "program or activity," A77, properly elicit the sharing of information generated in the course of funded law enforcement programs and activities.

Plaintiffs fare no better in pointing to the tense of the "coordination" referred to in 34 U.S.C. § 10153(A)(5)(C). Pl. Br. 30. Under plaintiffs' reading, DOJ would have no ability to enforce a grant condition even if the recipient made clear that it intended to end any coordination immediately after the grant was awarded. In any event, the notice and access conditions are consistent with Congress's chosen verb tense because they focus on the existence of a policy or practice of cooperation at the time of the grant award.

## II. The Byrne JAG Statute Requires Grantees to Comply With "Applicable Federal Laws," Including 8 U.S.C. § 1373

The requirement that grant recipients certify and maintain their compliance with 8 U.S.C. § 1373 is additionally authorized by 34 U.S.C. § 10153(A)(5)(D), which provides that Byrne JAG applicants must certify that they "will comply with all provisions of [the Byrne JAG Program] and all other applicable Federal laws." *Id.*

Plaintiffs contend that this language "refers only to the body of laws that by their express text apply to federal grants." Pl. Br. 32. The text of the statute is not so limited, referring instead to "*all other* applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D) (emphasis added); *see City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 944 (N.D. Ill. 2017). Congress is perfectly capable of writing a statute that refers specifically to laws applicable to federal grantees when it intends to do so. *See, e.g.*, 42 U.S.C. § 16154(g)(1)

12

("consistent with the generally applicable Federal laws and regulations governing awards of financial assistance, contracts, or other agreements"); Water Resources Reform and Development Act of 2014, Pub. L. No. 113-121, § 1043(a)(3)(C)(ii)(II), 128 Stat. 1193, 1246 ("will comply with all applicable Federal laws (including regulations) relating to the use of those funds").  Plaintiffs do not address these statutes, instead erroneously contending that reading the statute to mean what it says would render the term "applicable" superfluous.  Br. 32.  It was perfectly natural for Congress to specify that applicants need only comply with "applicable" laws to limit the certification to those laws that are germane to the Byrne JAG program and can thus be constitutionally applied as grant conditions to the program or activity at issue.  *See* Gov't Br. 23-24.

Plaintiffs do not advance their argument by contending that the Byrne JAG program was intended to give state and local governments flexibility to spend grant funds, and that requiring compliance with § 1373 (or other statutes) "would destabilize the formula nature of the grant."  Pl. Br. 34 (quoting *City of Philadelphia*, 916 F.3d at 290).  There is nothing "destabiliz[ing]" about requiring applicants to certify their compliance with federal law—provisions with which they should already be complying—particularly where that certification does not deprive them of any flexibility over how to spend their grant funds.

Nor is it true (as plaintiffs suggest, *see* Pl. Br. 34) that § 1373 became an "applicable Federal law" only in 2016.  Congress has always conditioned Byrne JAG

13

funds on a grantee's certification of compliance with "all other applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D). The certification requirement merely reflects DOJ's effort to ensure grantees are complying with that statute in light of a 2016 report by the Department's Inspector General. *See* A188-203 (Inspector General Report); A220-223 (IG Statement to Congress). That report indicated that multiple grantees were not complying with § 1373 and recommended "[r]equiring grant applicants to provide certifications specifying the applicants' compliance with Section 1373, along with documentation sufficient to support the certification." A223.

Plaintiffs engage in interpretive acrobatics in seeking to rely on DOJ documents predating the passage of the Justice System Improvement Act of 1979. Pl. Br. 33-34, 33 n.20. Although the value of those materials in understanding the 1979 statute is dubious in its own right, plaintiffs appear to contend that in creating the Byrne JAG statute twenty-seven years later, Congress believed that applicable statutes within the meaning of that program would include enactments like the Historical and Archeological Preservation Act, Pub. L. No. 93-291, 88 Stat. 174 (1974), and the Coastal Zone Management Act of 1972, Pub. L. No. 92-583, 86 Stat. 1280. *See* Law Enf't Assistance Admin., U.S. Dep't of Justice, *Guideline Manual: Guide for Discretionary Grant Programs*, app. 1, pt. 12, p. 14 (Sept. 30, 1978), https://go.usa.gov/xpppk. They would not, however, include statutes that speak directly to the relationship between state and local governments and federal law enforcement. On plaintiffs' theory, for example,

DOJ would be powerless to reject the Byrne JAG application of a state or locality that refused to properly register the transfer of regulated firearms under federal law, because those statutes do not single out states and localities in their capacities as federal grantees. *See* 26 U.S.C. §§ 5812, 5841 (describing registration and transfer requirements for all weapons "not in the possession or under the control of the United States").

Finally, Plaintiffs do not advance their argument by citing 34 U.S.C. § 10228(a), which states that DOJ may not, through its grants, "exercise any direction, supervision, or control over any police force . . . of any State or political subdivision thereof." *Id.*; *see* Br. 35-36. Plaintiffs do not and cannot explain how the certification requirement, which ensures that plaintiffs are complying with existing federal law, results in DOJ exercising "direction, supervision, or control" over their law enforcement agencies. Ensuring that state and local governments do not flout federal law as a condition of the receipt of federal funds does not implicate these concerns and does not approach the sort of "federalization of local police and law enforcement agencies" that § 10228(a) is designed to prevent. *Ely v. Velde*, 451 F.2d 1130, 1136-37 (4th Cir. 1971). Indeed, plaintiffs' arguments on this score prove far too much, in that they would appear to call into question any funding condition imposed by DOJ on a state or local law enforcement entity, including those that have been imposed, unchallenged, for many years.

### III.   Plaintiffs' Alternative Bases for Affirmance Should Be Rejected

Plaintiffs raise a host of other constitutional and administrative law claims as alternative bases for affirmance.  The district court declined to reach those claims, but if this Courts now elects to do so in the first instance, it should reject those arguments.

**A.**   1.   Plaintiffs assert that § 1373 is not an "applicable law" because the law impermissibly commandeers states and localities under the Tenth Amendment.  Pl. Br. 36-40.  This argument demonstrates a fundamental misunderstanding of the Supreme Court's Tenth Amendment jurisprudence.  As an initial matter, the Supreme Court has long emphasized that "a perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants."  *South Dakota v. Dole*, 483 U.S. 203, 210 (1987).  This appeal concerns an injunction prohibiting the application of § 1373 as a condition on federal grant funds.  The question whether the Tenth Amendment would prohibit Congress from imposing similar obligations on states and localities outside the grant context has no relevance to that inquiry.

Plaintiffs do not acknowledge this central point from *Dole*, instead citing it for the unrelated proposition that Congress cannot use the spending power "to induce the States to engage in activities that would themselves be unconstitutional," such as by conditioning funds on a state's engaging in "invidiously discriminatory state action or the infliction of cruel and unusual punishments."  483 U.S. at 210; *see* Pl. Br. 36.  That

16

proposition does not suggest that Congress cannot use its spending power to induce states to take actions that, under the Tenth Amendment, Congress could not require outright. As noted, *Dole* expressly held to the contrary.

Plaintiffs' contention that "Section 1373 cannot be considered an applicable law because it is unconstitutional," Pl. Br. 36, is wrong twice over. Plaintiffs ignore the unassailable textual point that § 1373 is a "federal law" that can be "applicable" as a funding condition. *See* Gov't Br. 23-25. The statutory question is whether Congress intended to make Byrne JAG applicants certify compliance with § 1373 as an "applicable Federal law[]." Because the answer to that question is yes, *see supra* pp. 12-15, Congress has permissibly applied § 1373 as a funding condition on Byrne JAG applicants, foreclosing a Tenth Amendment challenge in these circumstances. *See Dole*, 483 U.S. at 210. Moreover, as plaintiffs themselves appear to acknowledge (Pl. Br. 36), addressing the facial constitutionality of a statute in this case where it operates only as a condition on federal funds is inconsistent with basic principles of constitutional avoidance—particularly where the district court did not even address the issue.

2. In any event, § 1373 does not, as plaintiffs contend, regulate states and localities in violation of *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461 (2018). Pl. Br. 37. Rather, the statute provides for a free flow of information between federal, state, and local governments with regard to persons regulated at each level. Section 1373 requires the federal government to respond "to an inquiry by a Federal,

17

State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law." 8 U.S.C. § 1373(c). And, as relevant here, it does no more than preempt state and local governments from using the exercise of their own regulatory authority to frustrate the federal government's regulation of persons in their custody. Plaintiffs apparently do not dispute that their policies impede the enforcement of federal immigration law against private parties by prohibiting the sharing of information that is important to determining when DHS may detain and remove aliens.

Plaintiffs erroneously contend that § 1373 is not a preemption provision because it regulates only state and local governments. Br. 37-38. Of course, preemption provisions are always directed at governmental entities and not private persons. Moreover, § 1373 operates to preclude inconsistent regulation of aliens at different levels of government. Plaintiffs cannot contest that Congress could have required federal immigration authorities to take into custody and remove aliens without permitting states and localities to enforce local criminal law against them in the first instance. *See Herrera-Inirio v. INS*, 208 F.3d 299, 307-08 (1st Cir. 2000) (noting Congress's "plenary authority over immigration" and explaining that in exercising that power Congress "may freely displace or preempt state laws"). Congress, however, chose to preserve a role for state and local criminal justice systems, and enacted § 1373 in recognition of these overlapping schemes for regulating the same aliens, ensuring

18

that the federal government would respond to state inquiries and that the state would not use its authority to hinder federal immigration enforcement.  Placing conditions on a state or locality's exercise of its own regulatory authority in no respect constitutes commandeering.  *See Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 290-91 (1981) ("We fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role.").

Plaintiffs cannot abstract § 1373 from its important role in the context of the Immigration and Nationality Act (INA).  *Murphy* did not create a novel limitation that bars preemption of direct state interference with federal law.  The "controlling principle" is that "*any* state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause."  *Perez v. Campbell*, 402 U.S. 637, 652 (1971) (emphasis added); *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 322 (1819).

Plaintiffs wrongly suggest that Section 1373 "forecloses" the "option of non-participation in a federal program."  Pl. Br. 38.  The statute does not ask or require plaintiffs to "participate."  Plaintiffs have chosen to take advantage of the opportunity afforded by Congress to exercise state and local regulatory authority by enforcing state and local laws before the federal government enforces the immigration laws—despite Congress giving the federal government sole and final authority to enforce immigration

laws. Having done so, plaintiffs cannot frustrate the federal government's regulation of the same individuals by impeding communication about their release dates. Plaintiffs' analogy to *Printz v. United States*, 521 U.S. 898 (1997), highlights this error. Pl. Br. 37. The statute in *Printz* required state and local officials to carry out background checks at the federal government's behest. Section 1373 does not compel state or local officials to participate in immigration enforcement. It merely preempts state and local governments from using local criminal justice authorities to obstruct the federal government's enforcement of the immigration laws.

In short, plaintiffs are wrong to contend "Section 1373 is problematic under the Tenth Amendment" because it "precludes local lawmakers from passing laws that run counter to Section 1373." Pl. Br. 38. The very definition of preemption is that a state or locality may not enact or enforce laws that are preempted by federal law: "Congress may enact laws that 'curtail or prohibit the States' prerogatives to make legislative choices respecting subjects the States may consider important.'" *Herrera-Inirio*, 208 F.3d at 308 (quoting *Hodel*, 452 U.S. at 290). Federal preemption of state or local law commonly renders state and local officials unable to take certain actions they would otherwise take. Plaintiffs' complaints thus only highlight why § 1373 is properly understood as a preemption provision.

In any event, § 1373 is valid as an information-sharing provision that falls outside the scope of the anti-commandeering doctrine. A requirement to not prohibit or

20

restrict responding to, or to not interfere with, a federal inquiry about an alien's release date is not commandeering local officials to execute federal law.  The Supreme Court has never extended the anti-commandeering doctrine so far as to invalidate information-sharing provisions.  This Court should not do so here.  The Supreme Court in *Printz* explicitly distinguished statutes that "require only the provision of information to the Federal Government," reasoning that they "do not involve . . . the forced participation of the States' executive in the actual administration of a federal program." 521 U.S. at 918; *see also id.* at 936 (O'Connor, J., concurring).  The same is true of § 1373.

**B.**  Plaintiffs are likewise wrong to argue that the conditions at issue "are unconstitutional because they exceed two of several general restrictions on the spending power—namely, that conditions on federal funds must be unambiguous and reasonably related to the program, for which spending has been authorized."  Pl. Br. 50.  These freestanding Spending Clause challenges should be rejected.

In contending that "Congress has not made it unambiguously clear" that conditions are permissibly attached to Byrne JAG funds, Pl. Br. 50, plaintiffs merely repeat their flawed arguments about the textual authorization for the conditions at issue, which would, even if correct, not result in any constitutional defect.  As we explain above, Congress unambiguously granted the Assistant Attorney General the authority to place "special conditions on all grants," and likewise authorized the conditions here through provisions of 34 U.S.C. § 10153.  Plaintiffs also assert that the challenged

21

conditions are ambiguous because they "do not provide clear notice of what is required to comply," Br. 51, but identify no particular ambiguity or inconsistency to which they object, and have not sought clarification about those obligations. *See Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669, 672 (1985) (stating that "the Federal Government simply could not prospectively resolve every possible ambiguity" in a grant program and advising recipients to seek "clarification" from the administering agency).

Plaintiffs argue the grant conditions "are not germane to the purposes of the Byrne JAG program." Pl. Br. 51. This contention misconstrues both the statute and the Supreme Court's teachings. The Supreme Court "ha[s] suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are *unrelated* to the federal interest in particular national projects or programs." *Dole*, 483 at 207 (emphasis added; quotation marks omitted). Relatedness is not "an exacting standard," but instead is satisfied as long as the conditions "bear some relationship to the purpose of the federal spending." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (quoting *New York v. United States*, 505 U.S. 144, 167 (1992)); *see Koslow v. Pennsylvania*, 302 F.3d 161, 175 (3d Cir. 2002) ("discernable relationship"); *Kansas v. United States*, 214 F.3d 1196, 1199 (10th Cir. 2000) ("minimum rationality"). In *Dole*, for example, the Supreme Court held that it was constitutionally permissible to condition highway funding on a state's raising its drinking age.

Plaintiffs have not identified a single case in which a court found that the relatedness requirement was not satisfied, and they have not shown that the conditions at issue here are unrelated to the purposes of the Byrne JAG program. Plaintiffs attack a straw man by arguing that immigration enforcement in general is not sufficiently related to local criminal justice. Pl. Br. 51-52. Even if that were correct as a general matter—which it is not, *see City of Los Angeles v. Barr*, 929 F.3d 1136, 1176, 1178 (9th Cir. 2019) (rejecting a similar argument and observing that "cooperation on illegal immigration matters" has an impact on public safety which "has been acknowledged by the Supreme Court")—the purpose of the notice and access conditions is not to promote immigration enforcement generally. The purpose is instead to eliminate particular impediments to immigration enforcement created by the local law enforcement departments funded by the grants and to encourage the type of cooperation that is contemplated by the INA. *Cf.* Pl. Br. 20 ("[The INA] contemplates cooperation between the federal government and local governments. . . .").

The notice and access conditions are limited to aliens whom plaintiffs have taken into custody based on suspected criminal conduct, and they are designed to ensure that plaintiffs' criminal law enforcement does not obstruct federal law enforcement or endanger public safety by requiring at-large arrests in the community. The conditions ensure that local law enforcement officials that are funded by the federal law enforcement grants do not thwart the federal government's ability to remove aliens

whom the grant recipient itself arrested for criminal conduct. Declining to fund jurisdictions that hinder the removal of actual, or at least suspected, criminals is plainly related to the criminal-justice purposes of the Byrne JAG program.

Similarly, § 1373's prohibition on impeding cooperation with federal law enforcement is plainly germane to federal grants that promote local law-enforcement initiatives. In any event, the Spending Clause germaneness requirement does not apply to the § 1373 certification condition because the condition merely ensures compliance with an immigration statute that Congress enacted wholly apart from its spending authority. To the contrary, where Congress has independent Article I authority, the purpose of the germaneness requirement—to prevent Congress from using the Spending Clause to reach conduct otherwise beyond its legislative power, *see New York*, 505 U.S. at 167—is inapplicable.

**C.** Finally, plaintiffs err in contending (Pl. Br. 52-54) that the conditions at issue are arbitrary and capricious. As to the condition that jurisdictions certify their compliance with § 1373, the relevant question is simply whether Congress has made § 1373 an "applicable Federal law[]" with which plaintiffs must certify compliance. Plaintiffs do not explain how answering that legal question required a more "satisfactory explanation." Pl. Br. 53. The only novelty in the FY 2017 grant is that the Department called particular attention to grantees' compliance (or noncompliance) with the statute through the certification on the specific recommendation of the Inspector General,

whose 2016 report had demonstrated concrete concerns about noncompliance with § 1373—an action doubtless within DOJ's authority to require a certification "made in a form acceptable to the Attorney General."  34 U.S.C. § 10153(A)(5).

Plaintiffs fare no better in contending that the notice and access conditions are arbitrary and capricious because DOJ did not make an adequate factual determination about the conditions' effect on crime.  Pl. Br. 53-54.  It is sufficient under the APA's requirements for reasoned decision-making that DOJ acted to discourage a particular practice that has a deleterious effect on the federal government's efforts to enforce the laws and poses risks to officer safety and the community—an effect that plaintiffs do not dispute.  In particular, failure to provide the minimal cooperation envisioned by the conditions impairs federal immigration enforcement and forces the federal government to attempt to take custody of aliens in the community—at risk to the officers involved and to public safety—rather than taking custody through an orderly process that does not subject the community to intrusion and potential harm.  It is inherently rational to structure the Byrne JAG program in a way that permits the federal government to carry out its responsibilities under the INA in a safe and orderly manner.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
  *Assistant Attorney General*

AARON L. WEISMAN
  *United States Attorney*

/s/ Brian H. Pandya
BRIAN H. PANDYA
  *Deputy Associate Attorney General*

DANIEL TENNY
BRADLEY HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

December 2019

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,204 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Brian H. Pandya*
Brian H. Pandya

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Brian H. Pandya*
Brian H. Pandya